IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

Sarmad Abdulnour,

                Plaintiff,

    -vs-

Campbell Soup Supply Company, L.L.C.
  et al.,

                Defendants.

Case No. 3:05 CV 7205

MEMORANDUM OPINION
AND ORDER

JUDGE JACK ZOUHARY

## INTRODUCTION

This matter is before the Court on Defendants' Motion for Summary Judgment (Doc. No. 38), Plaintiff's Opposition (Doc. No. 53) and Defendants' Reply (Doc. No. 55). Plaintiff Sarmad Abdulnour was employed by Defendant Campbell Soup Supply Co. (Campbell Soup) from April 2003 until October 2003 when he was terminated. He filed suit against his employer and four members of its management -- Leonard Giesige, Alan Rippee, Kevin Rippee, and Nick Martinez -- under 42 U.S.C. § 2000e-2 et seq. (Title VII), OHIO REV. CODE § 4112.02(A) and (J), and common law alleging discrimination based on national origin, negligent supervision and retention, breach of implied contract, and promissory estoppel. This Court has subject matter jurisdiction over Plaintiff's claims pursuant to 42 U.S.C. § 2000e-5(f) and 28 U.S.C. § 1331, and supplemental jurisdiction pursuant to 28 U.S.C. § 1367.

Plaintiff fails to establish his claims against Defendants. After drawing all inferences in favor of Plaintiff, there is no genuine issue of material fact and Defendants are entitled to judgment as a matter of law.

## BACKGROUND

Sarmad Abdulnour is an Iraqi national and holds dual citizenship in both Iraq and Canada (Abdulnour Dep. 14).  He received U.S. permanent resident status in November 1999, but continued to live and work in Canada. *Id.* at 42, 45. Plaintiff began searching for U.S. employment in late 1999, and received an interview with Campbell Soup in February 2003. *Id.* at 66. Plaintiff visited the Napoleon, Ohio plant in March 2003 and met with management representatives. *Id.* at 76. In March 2003, Plaintiff had a telephone interview with the Operations Manager. *Id.* at 83. Later that month, Plaintiff received a phone call offering him employment, which Plaintiff accepted. *Id.* at 85. Plaintiff signed an employment application acknowledging he was an employee at will. *Id.* at 72.

Plaintiff began working in Napoleon, Ohio in April 2003 while his family resided in Canada until August. *Id.* at 90. During this time, Plaintiff participated in the Campbell Soup Employee Relocation Plan, which gave him the option to attempt to sell his Canadian residence on his own, or have Campbell Soup facilitate a sale if he was unable or unwilling to sell it on his own after ninety days (Pl. Memo. Opp. Summ. J., Ex. C). The Plan also included moving expenses, storage expenses, assistance in finding local housing and payment of closing costs. *Id.* Plaintiff was unable to sell his Canadian home by the end of July, and Flemming Scott, a Human Resources Manager, encouraged Plaintiff to sell it through the Campbell Soup Plan, which Plaintiff did (Abdulnour Dep. 207, 211-12, & 226-27).  Plaintiff purchased a home in Ohio in October 2003 and was granted an extension of storage benefits by Flemming for thirty days. *Id.* at 192-93.

Shortly after beginning work in April, Plaintiff attended a training program that lasted one week, but some initially scheduled training sessions were not completed. *Id.* at 99, 201-03. After his week-long program, Plaintiff began work as an area supervisor in the filling department. *Id.* at 112. Kevin Rippee, Plaintiff's immediate supervisor, claims that in May and June 2003 he spoke with Plaintiff about performance concerns, such as lack of communication, "failure to be on the floor often enough," a "lack of understanding of what is occurring in his area" and "poor level of involvement in his area" (Abdulnour Aff. ¶3; K. Rippee Aff. ¶6). Although Plaintiff disputes that these conversations ever took place (Abdulnour Dep. 117), Operations Manger Leonard Giesige confirms these concerns were conveyed to him (K. Rippee Aff. ¶8; Giesige ¶4).

In July 2003, Plaintiff was transferred to the second shift, and in August 2003 Alan Rippee became Plaintiff's immediate supervisor. *Id.* at ¶¶ 5, 8. Alan Rippee experienced many similar problems with Plaintiff and also conveyed his concerns to Giesige about Plaintiff's lack of communication, absence from the floor, and personal phone and internet usage (A. Rippee Aff. ¶¶ 5 and 8; Giesige ¶4).

Fred Avalos and Glen Lockhart, two long-term hourly employees who served as senior coordinators, also contacted Giesige about Plaintiff (Lockhart Aff. ¶3; Avalos Aff. ¶5; Giesige Aff. ¶5). They told Giesige that Plaintiff was uncommunicative, demeaning to employees, especially women, and "not engaged with the production process" (Lockhart Aff. ¶3; Avalos Aff. ¶5; Giesige Aff. ¶5).

Giesige personally observed Plaintiff ignore a light indicating that a line was down in his work area on five to ten occasions. Based upon his personal observations and complaints from the Rippees,

3

Lockhart and Avalos, Giesige spoke with Human Resources Director Nick Martinez and decided to terminate Plaintiff (Giesige Aff. ¶6).

On October 14, 2003, Plaintiff met with Giesige and Martinez who, although they did not specify any misconduct, did inform Plaintiff that his employment was not working out due to conflict of "management style or personality"(Abdulnour Dep. 174-77, 183; Giesige Aff. ¶ 7) and that it was similar to a marriage where "it's not working and they get a divorce." *Id.* At 175. Plaintiff responded that he did not "marry to get divorced" to which Giesige responded that "maybe it was the people of Northwest Ohio [who] have a problem with you." *Id.*

Whether Plaintiff was expressly told that he was terminated on October 14 is disputed. What is undisputed is that Plaintiff continued to work for an additional week, received an additional four weeks of pay, and refused an offered severance package. *Id.* at 180, 191. Plaintiff filed charges with the Ohio Civil Rights Commission alleging national origin discrimination, which were dismissed for lack of probable cause in December 2004 (Gubernath Aff. ¶7). Plaintiff filed this action in May 2005.

## STANDARD OF REVIEW

Pursuant to FED. R. CIV. P. 56(c), summary judgment is appropriate where there is "no genuine issue as to any material fact" and "the moving party is entitled to judgment as a matter of law." *Id.* When considering a motion for summary judgment, the Court must draw all inferences from the Record in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574 (1986). The Court is not permitted to weigh the evidence or determine the truth of any matter in dispute; rather, the Court determines only whether the case contains sufficient evidence from which a jury could reasonably find for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986).

**NATIONAL ORIGIN DISCRIMINATION**

In order to establish a prima facie Title VII discrimination claim, a plaintiff may prove direct or circumstantial evidence of discrimination. *DiCarlo v. Potter*, 358 F.3d 408, 414 (6th Cir. 2004). Plaintiff concedes that he has not offered any direct evidence of discrimination (Pl. Memo. Opp. Summ. J. 13).

Circumstantial evidence can be used to raise an inference of discrimination by applying the burden shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973).  A prima facie case of discrimination exists if the plaintiff can show that he: (1) is a member of a protected class; (2) was terminated; (3) was qualified for the position; and (4) was replaced by a person outside the class, or was treated differently than similarly-situated, non-protected employees. *DiCarlo v. Potter*, 358 F.3d 408, 415 (6th Cir. 2004). Defendants do not contest Plaintiff's prima facie case for the purposes of summary judgement (Def. Memo. Supp. Summ. J. 18).

Once Plaintiff establishes a prima facie case of discrimination, Defendants must articulate a legitimate, nondiscriminatory reason for Defendants' action. *DiCarlo*, 358 F.3d at 414.  Defendants only have a burden of production, not a burden of persuasion, and this Court does not undertake a credibility analysis. *Reeves v. Sanderson Plumbing Products,* 530 U.S. 133, 142 (2000). Defendants stated that they based Plaintiff's termination on his "poor performance and the undisputed complaints from the hourly workers he supervised and the Rippee brothers about plaintiff's poor performance as a supervisor" (Def. Memo. Supp. Summ. J. 18).  This "poor performance" included the management style and personality conflicts discussed by Giesige and Martinez  (Giesige Aff.  ¶¶ 4, 5; A. Rippee

Aff. ¶¶ 6-8; K. Rippee Aff. ¶¶ 6-7). These stated reasons are legitimate and nondiscriminatory grounds for termination.[1]

Once Defendants articulate a legitimate, nondiscriminatory reason for termination, Plaintiff must show that Defendants' reason was a pretext for discrimination. *DiCarlo,* 358 F.3d at 414-15. Pretext can be established by showing that Defendants' reason: (1) had no basis in fact; (2) did not actually motivate the decision to terminate; or (3) was insufficient to warrant the decision to terminate. *Manzer*, 29 F.3d at 1084. "A plaintiff must do more than simply impugn the legitimacy of the asserted justification for [the] termination; in addition, the plaintiff 'must produce sufficient evidence from which the jury may reasonably reject the employer's explanation.'" *Warfield v. Lebanon Correctional Inst.*, 181 F.3d 723, 730 (6th Cir. 1999) (citing *Manzer*, 29 F.3d at 1083).

The first *Manzer* method of proving pretext is to show the nondiscriminatory reason had no basis in fact. Under this method, Plaintiff must show more than a dispute about the underlying facts. "[A]s long as an employer has an honest belief in its proffered nondiscriminatory reason for discharging an employee, the employee cannot establish that the reason was pretextual simply because it is ultimately shown to be incorrect." *Majewski v. Automatic Data Processing, Inc.,* 274 F.3d 1106,

---

[1]

Defendants claim they are entitled to the "same actor inference," which permits this Court to "infer a lack of discrimination from the fact that the same individuals both hired and fired the employee." *Buhrmaster v. Overnite Transp. Co.*, 61 F.3d 461, 463 (6th Cir. 1995); *Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 573 (6th Cir. 2003). However, while Martinez may have been involved in both the hiring and firing of Plaintiff, Giesige was also a primary decision-maker in his termination, but not his hiring (Giesige Aff. ¶¶2, 6). When the termination process includes an individual with considerable influence, and that individual was not a participant in the hiring process, the "actor" in the hiring and in the firing cannot be considered the same. Therefore, Defendants are not entitled to this inference.

6

1117 (6th Cir. 2001). "In order to determine whether plaintiff had an 'honest belief' in the proffered basis for the [discharge], this Court looks to whether the employer can establish its 'reasonable reliance' on the particularized facts that were before it at the time the decision was made." *Braithwaite v. Timken Co.,* 258 F.3d 488, 494 (6th Cir. 2001). "The key inquiry is whether the employer made a reasonably informed and considered decision," and does not require that the employer's decisional process be optimal or leave "no stone unturned." *Smith v. Chrysler Corp.,* 155 F.3d 799, 807 (6th Cir. 1998). If Plaintiff fails to show a material dispute that Defendants made a "reasonably informed and considered decision," Plaintiff fails to establish pretext under the first *Manzer* method.

Under the "honest belief" analysis, if the proffered reason is reasonably informed and considered, the reason survives the first *Manzer* method. Defendants claim they fired Plaintiff because of his poor performance as a supervisor. At the time Defendants decided to terminate Plaintiff, Defendants had the following information: (1) complaint from K. Rippee to Giesige that Plaintiff was not adequately performing his job; (2) complaint from A. Rippee to Giesige about Plaintiff's poor performance as a supervisor; (3) complaint from Lockhart to Giesige and A. Rippee about Plaintiff's poor communication, absence on the floor of the facility, and berating of the employees, and Lockhart's statement that Plaintiff was the worst supervisor ever hired by Defendants; (4) complaint from Avalos to Giesige and A. Rippee about Plaintiff's treatment of the employees, his failure to be engaged in the production process, difficulty communicating, and that he was bossy and demanding.

Plaintiff fails to provide evidence that these complaints were false, inaccurate, or not made, or that Defendants failed to be reasonably informed or to reasonably consider the decision. Plaintiff also fails to show a lack of honest belief by Defendants that Plaintiff was poorly performing as a

7

supervisor, including his personality conflicts as reflected in part by his harsh treatment of employees.[2]

The Court is not persuaded that Plaintiff's lack of knowledge of complaints lodged against him, as well as circumstances surrounding his termination, create disputed material facts. For example, Defendants contend that Plaintiff knew he was being terminated on October 14, while Plaintiff claims he found out on October 21. This one week disparity does not create a disputed material fact. Likewise, whether Brian Bomer and Ardna Helberg, two hourly employees out of twenty-five to thirty-five employees supervised by Plaintiff, did not complain about Plaintiff does not erase the legitimate complaints lodged by others. Plaintiff also says he was told that the employment was not working out due to personality conflicts, an alleged contradiction of Defendants' stated reason for termination. However, a part of Plaintiff's poor performance and the complaints received about Plaintiff, were because of his conflicts with supervisors and subordinates. In short, Plaintiff fails to generally discredit Defendants' proffered reason for termination or to infer intentional discrimination.

Moreover, Plaintiff must provide sufficient evidence for a jury to reasonably reject the proffered reason, and infer that Defendants intentionally discriminated against him. *Braithwaite*, 258 F.3d at 493. Plaintiff contends that a jury could make such an inference under the analysis set forth in *Reeves v. Sanderson Plumbing Products,* 530 U.S. 133, 148 (2000) ("plaintiff's *prima facie* case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated"). However, this

---

2

     Plaintiff makes numerous allegations that the timing of the affidavits, the self-serving nature of the affidavits, and the absence of "independent corroborating evidence" creates a significant question of fact to be resolved at trial. This Court disagrees. Federal Civil Rule 56(e) expressly allows for affidavits to be used to support summary judgment motions. The affidavits provided by both parties meet the requirements set forth in Rule 56(e) and are properly considered by this Court.

analysis only applies in limited circumstances which are not present in this case since Plaintiff fails

to show that the proffered reason of poor performance was false. *Reeves* also specifically noted that

even if the stated reason is rejected, judgment as a matter of law may be appropriate when "the record

conclusively revealed some other nondiscriminatory reason for the employer's decision, or if the

plaintiff only created a weak issue of fact as to whether the defendant's reason was untrue and there

was abundant and uncontroverted independent evidence that no discrimination had occurred."

*Reeves*, 530 U.S. at 148. The Record here clearly supports Plaintiff's termination for

nondiscriminatory reasons and, additionally, Plaintiff's alleged issues of fact are sufficiently weak and

the record abundantly clear that discrimination did not occur during Plaintiff's employment. The

affidavits of the Rippees, Lockhart, and Avalos about Plaintiff's supervisory style support the absence

of discrimination, as well as Plaintiff's own statement that he was never discriminated against during

his employment.[3]

The second method of proving pretext is to show the reason did not actually motivate the

decision to terminate. "To establish pretext under the second *Manzer* method, the plaintiff admits the

---

3

Plaintiff alleges that unlawful discrimination can be inferred from circumstances surrounding the Iraqi war. The Record supports not only that Plaintiff's nationality was known at the time of his hire by Campbell Soup, but that during his employment fellow employees offered assistance and concern. Brian Bomer stated that employees discussed the Iraq war during lunch break (Bomer Dep. 55, 56, 58; Gubernath Aff. ¶4). Plaintiff was also asked by Kevin Rippee if he was having any difficulties at the plant because of his Iraqi national origin (K. Rippee Aff. ¶9). To these questions, Plaintiff always indicated that he was never treated badly, harassed, or discriminated against because of his national origin. Discussing world events, stating personal opinions on a war, and asking someone whether they are being harassed fail to establish an inference of discrimination or evince general hostility at the plant. In fact, both Bomer and Rippee's affidavits show proactive steps to prevent or stop potential harassment based on national origin. The only possible discriminating remark is the one made to Plaintiff that "maybe it was the people of Northwest Ohio" who had a problem with Plaintiff's management style (Abdulnour Aff. 178). While this statement standing alone could be read to be discriminatory, in the context of this case it clearly was not because Defendants were discussing personality and management conflicts with no indication these conflicts were based upon national origin.

factual basis underlying the discharge and acknowledges that such conduct *could* motivate the dismissal, but attacks the employer's explanation 'by showing circumstances which tend to prove an illegal motivation was *more* likely than that offered by the defendant.'" *Smith v. Leggett Wire Co.*, 220 F.3d 752, 759 (6th Cir. 2000) (citing *Manzer,* 29 F.3d at 1084). "In other words, the plaintiff argues that the sheer weight of the circumstantial evidence of discrimination makes it 'more likely than not' that the employer's explanation is a pretext, or coverup." *Manzer,* 29 F.3d at 1084.  Plaintiff would have to show that, even if he did perform poorly and have complaints lodged against him, it was more likely than not that Defendants terminated him because of an illegal motivation.  For the reasons stated above, Plaintiff offers insufficient evidence to prove that it was more likely than not that Defendants were actually motivated by national origin discrimination.

The final method of showing pretext is to prove the nondiscriminatory reason was insufficient to warrant the decision to terminate. This method usually consists of "evidence that other parties . . . were not fired even though they engaged in substantially identical conduct." *Manzer*, 29 F.3d at 1084. Plaintiff has not offered any evidence of an employee who was similarly situated and was not terminated.

In sum, Plaintiff fails to establish sufficient evidence for a jury to reasonably reject Defendants' reason and infer that Defendants intentionally discriminated against Plaintiff.  Plaintiff fails to show Defendants' decision to terminate him had no basis in facts honestly believed by Defendants, did not actually motivate Defendants, or was insufficient to warrant termination.

**NEGLIGENCE CLAIMS**

Plaintiff alleges in his Complaint negligent supervision and retention (Count III) and negligence (Count IV) by Defendants.  In his brief, Plaintiff combines all of his negligence claims into one argument.

The elements of negligent supervision and retention are:  (1) the existence of an employment relationship; (2) the employee's incompetence; (3) the employer's actual or constructive knowledge of such incompetence; (4) the employee's act or omission causing the plaintiff's injuries; and (5) the employer's negligence in retaining the employee as the proximate cause of plaintiff's injuries. *Steppe v. Kmart Stores*, 136 Ohio App. 3d 454, 465 (Ohio Ct. App.1999).

Plaintiff claims that Defendants negligently retained and supervised its management personnel who owed a duty to "train or coach the Plaintiff to help him recognize and overcome any alleged performance problems" as a new employee.  Plaintiff seeks purely economic damages. This Court has grave reservations about recognizing a tort claim in the context of this case. *Chemtrol Adhesives, Inc. v. American Mfrs. Mut. Ins. Co.*, 42 Ohio St. 3d 40, 45 (1989) (holding that Ohio recognizes the economic-loss rule and that "[w]hen the promisee's injury consists merely of the loss of his bargain, no tort claim arises because the duty of the promisor to fulfill the term of the bargain arises only from the contract."). Such a tort claim is usually recognized in cases for  personal injury, wrongful death, or property damage of a third party -- cases in which there is no privity of contract. Plaintiff, who is in privity with Defendants through his at-will employment agreement, seeks damages arising out of that agreement. Under the economic-loss rule, any failure of Defendants to fulfill their duties under the agreement cannot be brought under tort law, and Plaintiff has not cited authority which recognizes an exception.

11

Even assuming that Plaintiff has a legally cognizable claim, Plaintiff has not articulated or provided evidence of Campbell Soup's negligence.

### IMPLIED CONTRACT

In Ohio, there is "a strong presumption in favor of a contract terminable at will unless the terms of the contract or other circumstances clearly manifest the parties' intent to bind each other." *Henkel v. Educ. Research Council*, 45 Ohio St. 2d 249, 255 (1976). Because employment is presumed to be at-will, "the party to an implied contract of employment has a heavy burden. He must prove the existence of each element necessary to the formation of a contract." *Penwell v. Amherst Hosp.*, 84 Ohio App. 3d 16, 21 (1992). Therefore, the party relying on an implied contract must prove the exchange of bilateral promises, consideration and mutual assent. *Gargasz v. Nordson Corp.*, 68 Ohio App. 3d 149, 154 (1990). Specifically, "there must be specific evidence to show that the parties mutually assented to something other than at-will employment."*Reasoner v. Bill Woeste Chevrolet, Inc.*, 134 Ohio App. 3d 196, 200 (1999). "Unless the terms of the agreement or the circumstances manifest the parties' mutual intent to bind each other, the Ohio Supreme Court has evidenced a strong presumption favoring employment at-will." *Dunina v. LifeCare Hosps. of Dayton*, 2006-Ohio-2824, at ¶16 (Ohio Ct. App.). Under Ohio law, a court may consider the facts and circumstances surrounding the at-will employment relationship. *Wright v. Honda of Am. Mfg. Inc.*, 73 Ohio St. 3d 571, 574 (1995). This includes, but is not limited to, the "character of the employment, custom, the course of dealing between the parties, or other fact which may throw light upon the question," as well as employee handbooks, company policy, and oral representations. *Mers v. Dispatch Printing Co.*, 19 Ohio St. 3d 100, 104 (1985).

Plaintiff admits he signed documents which expressly establish his at-will employee status and that Defendants never promised job security or a specific length of employment (Abdulnour Dep. 72, 218). Plaintiff asserts, however, that Defendants' active recruitment of him, failure to follow the ordinary and customary job performance evaluation and review process, and encouragement for and assistance with Plaintiff's relocation and sale of his home altered his at-will status. Plaintiff fails to support his claim with evidence of Defendants' custom, language in handbooks or company policies, or oral representations that show mutual assent to alter Plaintiff's at-will status. Recruitment and relocation benefits, standing alone, cannot change his employment status. *See Bertrand v. Controlled Power Ltd. Partnership*, No. 1995CA00398, 1996 WL 752846, at \*2-3 (Ohio Ct. App. Nov. 18, 1996) (payment of relocation expenses does not provide a promise of continued employment even when the relocation policy states the employee is expected to work for two years and must repay relocation expenses if he quit within one year). In light of Ohio's strong presumption in favor of at-will employment, without further evidence, these facts fail to sufficiently establish bilateral promises or mutual assent to alter Plaintiff's at-will employment.

### PROMISSORY ESTOPPEL

While at-will employment is presumed in Ohio, promissory estoppel is an exception to that presumption. *Gouge v. Bax Global, Inc.*, 252 F.Supp. 2d 509, 519 (N.D. Ohio 2003). Promissory estoppel will negate an at-will agreement when "a promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee . . . and which does induce such action or forbearance, if injustice can be avoided only by enforcement of the promise." *Mers*, 19 Ohio St. 3d at 105. "The test in such cases is whether the employer should have reasonably expected its

13

representation to be relied upon by its employee and, if so, whether the expected action or forbearance actually resulted in and was detrimental to the employee." *Gouge*, 252 F.Supp. 2d, 519.

Promissory estoppel claims require justified, reasonable and detrimental reliance on a clear, unambiguous and specific promise of job security. *Gouge*, 252 F.Supp. 2d, 519; *Wing v. Anchor Media, Ltd. of Texas*, 59 Ohio St. 3d 108 (1991); *Rudy v. Loral Defense Systems*, 85 Ohio App. 3d 148 (Ohio Ct. App. 1993); *Shaw v. J. Pollock & Co.*, 82 Ohio App. 3d 656 (Ohio Ct. App. 1992); *Penwell v. Amhurst Hosp.*, 84 Ohio App. 3d 16 (Ohio Ct. App. 1992). The existence of a promise is the threshold question, and is dealt with first.

Under Ohio law, a promise must be clear and unambiguous in its terms. *Rudy*, 85 Ohio App. 3d at 154. Vague or nebulous assurances of job security are not sufficient. *Gouge*, 252 F.Supp. 2d at 519 (holding that "I don't want you guys to worry about it, we're going to take care of you. You guys are going to get to run it," is not specific enough for promissory estoppel); *Lake v. Wolff Brothers Supply, Inc.*, No. 63959, 1993 WL 462866, at *5-7 (Ohio Ct. App. 1993) ("With this kind of partnership, you will have a job until you retire" was not a specific promise for continued employment until retirement); *Klaus v. Kilb, Rogal & Hamilton Co. of Ohio*, 437 F.Supp. 2d 706, 729 (S.D. Ohio 2006). Furthermore, the subjective expectations of the employee are irrelevant as to the existence of a promise. *Gunthorpe v. Daimler Chrysler Corp.*, 205 F.Supp. 2d 820, 826 (N.D. Ohio 2002) (Plaintiff's own plans to work for employer for 12-15 years, and the notation of these plans by an interviewer, is not a promise of continued employment when Plaintiff was never expressly told he would be retained that long).

As with Plaintiff's claim of implied contract, Plaintiff admits that he signed documents expressly stating his at-will employee status, and that Defendants never promised job security or a

14

specific length of employment. Plaintiff asserts, however, that Defendants' encouragement for and assistance with Plaintiff's relocation and sale of his home altered his at-will status through promissory estoppel. Plaintiff fails to indicate a clear, unambiguous promise upon which he relied.  Relocation assistance, like other employee benefits, such as health care and insurance, cannot change an at-will status.  Assisting with the sale of Plaintiff's house is, at best, a vague promise which does not rise to the level of specificity required by Ohio law. Further, there is no claim by Plaintiff that this assistance was accompanied by a Campbell Soup promise of employment for a specified period that altered his at-will employment.  The assistance was typical of that offered to other employees and was not crafted solely for Plaintiff.  Plaintiff's own subjective interpretation does not evince a clear unambiguous promise.

### CONCLUSION

For the reasons stated above, Plaintiff fails to establish the elements of each of his claims. Therefore, Defendants' Motion for Summary Judgment (Doc. No. 38) is GRANTED and the case is dismissed as to all Defendants.

IT IS SO ORDERED.

s/ *Jack Zouhary*
JACK ZOUHARY
U. S. DISTRICT JUDGE

October 31, 2006

15